UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA DONNELLAN | : | |
| | : | Civil No. 3:23-cv-01728-RDM |
| Plaintiff | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| HENRY LINDNER, M.D. | : | |
| | : | |
| Defendant | : | |

**PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANT HENRY LINDNER'S MOTION TO DISMISS**

Plaintiff Patricia Donnellan, by and through her undersigned counsel, respectfully requests that this Honorable Court deny the motion of Defendant Henry Lindner, M.D., and states as follows:

I.  **COUNTERSTATEMENT OF FACTS**

Resolution of this motion requires consideration of the facts cited throughout this brief, and in particular the following:

First, Defendant misstates the nature of this Court's jurisdiction. *See* Def. Mot. to Dismiss at ¶¶ 24-25. As alleged in the Complaint, jurisdiction in this case is predicated upon diversity, under 28 U.S.C. § 1332. Compl. at ¶ 1 (M.D.Pa. Oct. 17, 2023). There are no supplemental claims.

1

In substance, the Complaint alleges that Defendant diagnosed Plaintiff with a disease caused by the *babesia odocoilei* parasite that Defendant admitted was "unknown to mainstream medicine." *Id.* at ¶ 11. It has never been confirmed whether Plaintiff actually had this unknown disease. *Id.* at ¶¶ 13-14. Nonetheless, Defendant treated her for it anyway, with a drug protocol of his own invention that he knew posed serious and dangerous risks to patients, including suicidality. *Id.* at ¶¶ 18-28.

The Complaint alleges many examples of Defendant's reckless and outrageous conduct. Not long before Plaintiff's hospitalization, Defendant directed Plaintiff to begin a "fast-track approach" of increasing corticosteroid doses quickly, even though he admitted two of his other patients had been hospitalized. *Id.* at ¶ 30. The next month, when Plaintiff told Defendant that the corticosteroid treatment was not working, Defendant compared her to his daughter and wrote that she had a "need" for even higher corticosteroid doses, that his daughter in a similar situation had "no choice" but to take very large doses, and that Plaintiff's "alternative" was to "to stay in your current condition indefinitely." *Id.* at ¶¶ 34-35. Defendant instructed Plaintiff to "overdose[]" on corticosteroids, *id.* at ¶ 39, and even as she told him that she felt like she was "crawling towards death," he increased her dosages and worked to keep her out of a hospital where a reasonable physician might intervene. *Id.* at ¶¶ 33-39.

## II.   QUESTIONS PRESENTED

Plaintiff answers Defendant's questions in the negative, and contends that only the following two[1] questions are presented, with affirmative answers to both:

1. Whether the facts alleged in the Complaint, if accepted as true, establish a plausible demand for punitive damages; and

2. Whether the facts alleged in the Complaint, if accepted as true, establish plausible claims for Intentional[2] Infliction of Emotional Distress.

## III.   MOTION TO DISMISS STANDARD

When deciding a motion to dismiss, the Court must accept the Complaint's factual allegations as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Those

---

[1] To the extent that Defendant creates a third question by separately moving to strike language related to Plaintiff's claim for punitive damages, that question is derivative of the plausibility of the punitive damages request.  Furthermore, "a Rule 12(f) motion to strike has 'no application to a request for punitive damages, in that it does not constitute redundant, immaterial, impertinent, or scandalous matter.'" *Castelli-Velez v. Moroney*, No. 20-CV-00976, 2021 WL 978814, at *4 (M.D. Pa. Mar. 16, 2021) (citations and quotation omitted); *Jordan v. Wilkes-Barre Gen. Hosp.*, No. 07CV390, 2008 WL 3981460, at *5 (M.D. Pa. Aug. 22, 2008) (treating a Rule 12(f) motion with respect to punitive damages as a motion to dismiss).

[2] Defendant misidentifies Plaintiff's claim as being for Negligent Infliction of Emotional Distress, despite the fact that intent and recklessness are plainly alleged in Count Two and throughout the Complaint.

allegations must establish the plausibility of a plaintiff's claim, which is not equivalent to "probability." *Id.* In determining whether a complaint meets the plausibility threshold, courts must consider the facts alleged and reasonable inferences therefrom in a light favorable to the plaintiff. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 131 (3d Cir. 2016). It is the moving party's – not the plaintiff's – burden to show that the complaint fails to state a claim. *Holloway v. Holt*, No. 3:14-CV-0016, 2015 WL 877468, at *2 (M.D. Pa. Mar. 2, 2015).

## IV. ARGUMENT

Defendant's motion seeks the dismissal of Plaintiff's request for punitive damages and her emotional distress claim. The Court should reject both arguments, and Plaintiff addresses each in turn.

### A. Punitive Damages

Defendant's motion should be denied because it is premature to dismiss requests for punitive damages at the pleadings stage. *See, e.g.*, *Medina v. Haas*, No. 4:21-CV-1000, 2021 WL 6063237, at *4 (M.D. Pa. Dec. 22, 2021) ("Because a punitive damages award hinges on a defendant's state of mind, a judgment on the pleadings that asks to dismiss a punitive damages claim is not appropriate. . . . This is well established in this District, and in our sister districts across the Commonwealth."); *Waller v. Cabot Oil & Gas Corp.*, No. 3:21-CV-569, 2022 WL 1571001, at *4 (M.D. Pa. May 18, 2022) (explaining that a motion to dismiss

punitive damages was premature "before discovery could reveal the presence or absence of conduct evidencing the requisite improper motive or reckless indifference").

The Complaint contains sufficient and detailed factual allegations which, if accepted as true, establish the plausibility of Plaintiff's entitlement to punitive damages because of Defendant's recklessness.[3] A punitive damages request based on reckless indifference "must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 257 (E.D. Pa. 2008) (quoting *Hutchison ex. rel. Hutchison v. Luddy*, 870 A.2d 766, 771-72 (Pa. 2005)).

Defendant's "subjective appreciation of the risk of harm" that he was committing medical malpractice begins with a diagnosis that he himself

---

[3] Defendant moves to strike or dismiss the terms "willful," "wanton," and "reckless" from the Complaint, but it is only necessary to consider Defendant's recklessness to resolve this motion. Pennsylvania's "MCare" Act, 40 P.S. § 1303.505(a), effectively equates the three terms with respect to punitive damages, and so has the Pennsylvania Supreme Court. *See SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702, 704-05 (Pa. 1991); *see also Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1275 (3d Cir. 1979) ("[R]eckless conduct causing emotional distress renders an actor as liable as if he had acted intentionally.").

acknowledged was "unknown to mainstream medicine." Compl. at ¶ 11.  To treat the unknown disease, Defendant prescribed corticosteroid doses and other drugs that a reasonable physician would not prescribe. *Id.* at ¶¶ 17-19, 32.  Defendant's "subjective appreciation of the risk of harm" also included his "aware[ness] that his treatment program for babesiosis would cause his patients to become more ill."  *Id.* at ¶ 20.

Any doctor should be aware that making up a treatment program for an unknown disease entails major risks to patients, but the Complaint is far more specific: it alleges that Defendant knew Plaintiff was at risk of experiencing the very same side effects she did ultimately experience.  When Defendant sent Plaintiff the "Treatment of Chronic Babesiosis" document, he knew that his treatment program would cause "muscle weakness," in his patients, *id.*, and Plaintiff later did develop severe steroid myopathy.  *Id*. at ¶¶ 48-50.  Likewise in May 2022, Defendant wrote to Plaintiff that suicidal ideation and painful stretch marks on the skin were both side effects of his babesiosis protocol, and Plaintiff later experienced both side effects.  *Id*. at ¶¶ 28, 36 50.  A third example occurred in October 2022, when Defendant wrote to Plaintiff that "Dex/Pred has negative effects on the body," including "facial puffiness and abdominal weight gain, and that "[a]t high doses the muscles atrophy," which is precisely what happened to Plaintiff.  *Id*. ¶¶ 35, 37, 50.

The Complaint thus satisfies the first element of recklessness, and it also contains sufficient allegations of the second: that Defendant continued to act with disregard for the harm of which he was aware. Paragraphs 33 through 47 of the Complaint show that, even as Plaintiff wrote to him that she was "so horribly incapacitated," *id.* at ¶ 37, that she could not stand up on her own, and that she felt like she was dying, Defendant escalated her corticosteroid dose even further. Defendant even continued to do so while admitting "I'm scared about you too—and hoping you don't have steroid myopathy." *Id*. at ¶ 44.

The Complaint's description of how Defendant continued escalating Plaintiff's corticosteroid dosages even as he knew that she was experiencing such negative side effects is more than sufficient to survive a motion to dismiss. *Cf. Thomas v. Cnty. of Chester, Pocopson Home*, 312 F. Supp. 3d 448, 455 (E.D. Pa. 2018) (denying motion to dismiss punitive damages where doctor was made aware of nursing home patient's decreased food intake and weight loss, and did not make any changes to the care plan); *Stroud*, 546 F. Supp. 2d at 257 (denying motion to dismiss where hospital's treatment did not address patient's complaints and CT results); *Medvecz v. Choi*, 569 F.2d 1221, 1229 (3d Cir. 1977) (holding that a jury could conclude that there was reckless indifference if it found that doctor failed to monitor and respond to patient's changing reaction to drug); *cf. Mattson v. Idaho Dep't of Health & Welfare*, No. 49187, 2023 WL 3236922, at *14 (Idaho May 4,

2023) (finding a material issue of fact where patient attempted suicide after defendant prescribed Prozac but failed to warn, educate, and monitor patient).

While the above analysis focuses on the first (malpractice) count of the Complaint, there are also sufficient facts to justify a punitive damages award for Defendant's reckless infliction of emotional distress upon Plaintiff (Count Two). As noted above, Defendant was well-aware of the severe emotional distress that his protocol could cause, and that Plaintiff was in fact experiencing. Compl. at ¶¶ 20, 27-28, 36-37. Nonetheless, Defendant continued escalating Plaintiff's corticosteroid dosages.

### B. EMOTIONAL DISTRESS CLAIM

Apart from his challenge to Plaintiff's request for punitive damages, Defendant also argues for the dismissal of the intentional infliction of emotional distress claim. The Third Circuit has predicted that the Pennsylvania Supreme Court would recognize the tort of intentional infliction of emotional distress, *see Pavlik v. Lane Ltd./Tobacco Exporters Int'l*, 135 F.3d 876, 890 (3d Cir. 1998), and the Pennsylvania Superior Court has recognized the same tort, including when it is alleged alongside a medical malpractice claim. *See Hoffman v. Mem'l Osteopathic Hosp.*, 492 A.2d 1382, 1386 (Pa. Super. 1985); *see also Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (2000) (acknowledging that the minimum elements of such a claim are found in Restatement (Second) of Torts § 46).

"At the pleading stage, the court is to decide as an initial matter whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute 'outrageousness' as a matter of law." *Smith v. Roberts*, No. 18-CV-1957, 2019 WL 3838316, at *3 (M.D. Pa. Aug. 15, 2019) (quotation marks and citations omitted). This threshold question requires the court to determine whether the conduct was so outrageous in character as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Dobson v. Milton Hershey Sch.*, 356 F. Supp. 3d 428, 439 (M.D. Pa. 2018) (quotation marks and citations omitted).

In making this determination, the Court must still view the factual allegations in a light most favorable to Plaintiff. *See, e.g.*, *Hollinghead v. City of York*, 912 F. Supp. 2d 209, 226 (M.D. Pa. 2012). Courts in this Circuit have also recognized that the outrageousness standard is less stringent in the context of a special relationship, such as physician-patient. *Sharrow v. Bailey*, 910 F. Supp. 187, 194 (M.D. Pa. 1995); *Jones v. CVS Pharmacy, Inc.*, No. 21-CV-157, 2022 WL 4536124, at *7 (M.D. Pa. Sept. 28, 2022); *see also Woolfolk v. Duncan*, 872 F. Supp. 1381, 1391 (E.D. Pa. 1995) (collecting cases); *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989).

Although Defendant points to the Pennsylvania Supreme Court's opinion in *Hoy v. Angelone*, 720 A.2d 745 (Pa. 1998), for its observation that "only the most egregious conduct" meets the exacting standard for an emotional distress claim to

survive, this is plainly an egregious case. The facts cited and discussed above show that Defendant knew his treatment protocol could cause suicidal ideations and other extreme forms of emotional distress; he prescribed that protocol to Plaintiff anyway; and he continued to direct her to take the high-dose corticosteroids even as she reported feeling like she was dying, and other extreme forms of emotional distress.

This is not a case where a defendant's conduct varies from the norm by degree. Defendant is a doctor who directed his patient to overdose on a drug. Compl. at ¶ 39. Plaintiff followed such outrageous advice because Defendant convinced her that she was harboring dangerous parasites, and because Defendant had treated his daughter the same way, who he argued had "no choice" but to "take more Dex/Pred than any person has ever taken." *Id.* at ¶¶ 21, 34. Defendant then worked to keep Plaintiff out of the hospital, where a reasonable physician could have intervened. *Id.* at ¶¶ 33, 38. In multiple ways, Defendant's conduct is intolerable for a physician.

This Court considered an emotional distress claim in the medical context in *Ponzini v. Monroe County*, 897 F. Supp. 2d 282 (M.D. Pa. 2012), where it refused to dismiss the claim. The Court noted that Pennsylvania law is demanding with respect to such claims, and that successful ones often involve "what from any vantage point is *deliberately* extreme and outrageous conduct." *Id.* at 291 (emphasis added). Here, the deliberateness of Defendant's conduct is evident throughout the entire Complaint: he begins treating Plaintiff knowing the risk of such high

corticosteroid doses, and he continues to prescribe in greater amounts even while acknowledging the harm that they cause. This case aligns squarely with this Court's decision in *Ponzini*.

In a neighboring district, a court addressed the over-prescription of medication and found that such allegations could meet the outrageousness standard. *McDonald-Witherspoon v. City of Philadelphia*, No. CV 17-1914, 2018 WL 4030702, at *13 (E.D. Pa. Aug. 23, 2018), *aff'd*, No. 21-1019, 2021 WL 6101246 (3d Cir. Dec. 21, 2021). There, the defendants gave an inmate more than a month's worth of blood pressure medicine despite knowing that he suffered from psychiatric conditions and had just left a psychiatric hospital. *Id.* at *1. The inmate consumed more than eleven times the therapeutic level of the drug and died. *Id.* at *2. The court found that these allegations were sufficiently outrageous because the defendants "willfully gave Jones a lethal amount of medication, with full knowledge of the danger it posed to him." *Id.* at * 13. Likewise here, Lindner knew of the multiple and specific dangers posed to Plaintiff by his drug protocol, but he directed her to continue following it, and she only stopped when she was eventually hospitalized.

For all of these reasons, the Complaint's allegations sufficiently describe both reckless and outrageous conduct by Defendant, and his motion should be denied in its entirety.

## V. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT

If the Court concludes that Plaintiff's complaint is insufficient in any respect, Plaintiff respectfully requests that the Court "expressly state . . . that the plaintiff has leave to amend within a specified period of time." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("It does not matter whether or not plaintiff seeks leave to amend. We have instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile.") (quotation marks and citations omitted).

## VI.   CONCLUSION

For the reasons set forth herein, Plaintiff Patricia Donnellan respectfully requests that this Court deny Defendant's motion in its entirety, and enter an Order in the form proposed.

                                                  **KLINE & SPECTER, P.C.**

BY: *Conor Lamb*
              _____
              SHANIN SPECTER, ESQUIRE
              PA Attorney I.D. No. 40928
              CONOR LAMB, ESQUIRE
              PA Attorney I.D. No. 304874
              1525 Locust Street, 19th Floor
              Philadelphia, PA 19102
              Telephone: (215) 772-1000
              Facsimile: (215) 402-2359
              Shanin.Specter@klinespecter.com
              Conor.Lamb@klinespecter.com

Date: <u>November 15, 2023</u>